# Addison County Community Action, John W. Graham Emergency Shelter Service, Inc. & The Counseling Service of Addison County v. City of Vergennes

[565 A.2d 233]

No. 87-396

Present: Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.

Opinion Filed June 23, 1989

Motion for Reargument Denied July 19, 1989

*Neuse & Smith,* Middlebury, for Plaintiffs-Appellees.

*Ouimette & Runcie,* Vergennes, for Defendant-Appellant.

**Dooley, J.** The City of Vergennes appeals a decision of the Addison Superior Court granting plaintiffs summary judgment, ordering the City to remit certain voter-approved funds, and denying the City's motion for summary judgment. Plaintiffs cross-appeal that part of the order denying their request for attorney's fees. We affirm.

In late 1986 and early 1987 plaintiffs, Addison County Community Action Group, John W. Graham Emergency Shelter Service, Inc., and The Counseling Service of Addison County, Inc. (hereinafter, the Agencies), circulated a joint petition requesting that funding articles from each agency be voted upon at the annual town meeting. The Agencies filed the petition with the Vergennes city clerk on January 13, 1987.

Each article requested voters to determine whether to allocate specific sums to each agency, as follows:

1. Will the City vote $1,200.00 to be given to the Addison County Community Action Group, Inc., to be used to help pay part of the cost of providing emergency services (other than shelter), said sums to come from City funds?

2. Will the City vote $1,200.00 to be given to the John W. Graham Emergency Shelter Service, Inc., to be used to help pay part of the cost of providing emergency shelter to the homeless, said sum to come from City funds?

3. Will the City vote $1,000.00 to be given to the Counseling Service of Addison County, Inc., to be used to help pay part of the cost of providing mental health care to city residents, said sum to come from City funds?

The City included the petitioned articles for vote by Australian Ballot, with the words "(Nonbinding referendum)" added after each, in the warning for the annual city meeting.[1] On March 3, 1987, the voters approved all three articles. The City refused to allocate the funds, however, claiming that by law and its charter the city council had the sole authority and discretion in setting the budget and, therefore, was not bound by the vote. Plaintiffs then instituted an action for declaratory judgment, seeking payment of the funds. Upon motion, the trial court granted summary judgment to the Agencies, ordered the City to remit the funds as approved, and denied the City's motion for summary judgment.

■■ The first issue before this Court is whether the trial court erred in granting summary judgment to the Agencies. Summary judgment is appropriate if there is "no genuine issue as to any material fact and ... any party is entitled to a judgment as a matter of law." V.R.C.P. 56(c). Therefore, the moving party has the burden of satisfying a two-part test: "first, no genuine issue of material fact must exist between the parties, and second, there must be a valid legal theory which entitles the moving party to judgment as a matter of law." *Smith v. Day*, 148 Vt. 595, 596, 538 A.2d 157, 158 (1987). Upon

---

[1] The petitioned articles were identified as Articles II, III, and IV, respectively, in the warning.

review, we apply the same standard as the trial court to determine the correct disposition of a motion for summary judgment. *Cavanaugh v. Abbott Laboratories*, 145 Vt. 516, 520, 496 A.2d 154, 157 (1985).

The first prong of the test is to determine whether any genuine issue of material fact exists between the parties. The determinative facts in this case are undisputed.[2] Therefore, we need only determine whether there was a valid legal theory entitling the Agencies to judgment as a matter of law.

The parties have presented a series of arguments about the powers and responsibilities of the governing body of the City and its citizens under the City charter and our general law of municipalities. These arguments become relevant only in the absence of a specific statute authorizing and implementing the vote of the City residents in this case. Since we find such specific statutory authority here, we do not reach many of the arguments of the parties.

In 1974, the Legislature enacted three statutes comprising the law on "social services for town residents." 24 V.S.A. §§

---

[2] The procedure in the lower court was, however, somewhat unusual, and defendant has raised procedural irregularities in this Court. Following the filing of an unverified complaint and an unverified answer, both parties moved for summary judgment, alleging that there were no genuine issues of fact. Because no affidavits were filed, the summary judgment motions were really requests for judgment on the pleadings. See Reporter's Notes to V.R.C.P. 56(c).

Once the City learned that it had been denied summary judgment and that the Agencies had prevailed, the City moved the trial court "to amend its findings or to make additional findings and to alter or amend its opinion." The motion was an unfocused barrage of objections, including objections to the summary judgment proceeding.

It was interpreted by the trial judge as a contest on whether the requested appropriations would be "necessary town expenses" as that term is used in 17 V.S.A. § 2664. In response to the motion the trial court held an evidentiary hearing on this issue and found specifically that the expenditures would be "necessary town expenses." The City alleges that this hearing was error because the court engaged in fact finding on a summary judgment motion. It also argues that it should have been able to engage in discovery prior to the hearing.

We rely on the evidentiary hearing only for the evidence that the Agencies are social services programs that extend services to residents of the City, points that are not seriously in dispute. To the extent that the trial court deviated from proper summary judgment procedure, the error was invited by defendant and is harmless in view of the result here. The City was not prejudiced by the denial of discovery in view of our disposition.

2691–2693. A town is authorized to appropriate funds for social service programs, as follows:

> At a meeting duly warned for that purpose, a town or incorporated village may appropriate such sums of money as it deems necessary for the support of social service programs and facilities within that town for its residents. Social service programs, for which a town or incorporated village may appropriate sums of money, include, but are not limited to: transportation, nutrition, medical, day care, and other rehabilitative services for persons with low incomes, senior citizens, children, disabled persons, drug and alcohol abusers, and persons requiring employment to eliminate their need for public assistance....

24 V.S.A. § 2691. On the surface, this statute appears to apply to this case. The expenditures were "duly warned" for the 1987 annual meeting of the City. See 17 V.S.A. § 2642(a); *Brochu v. Brown*, 128 Vt. 549, 552, 268 A.2d 745, 747 (1970) (purpose of warning is to give notice of subject matter of proposed vote). The warnings provided for appropriations—that is, the assigning of money to a specific use—for the Agencies. See *Grout v. Gates*, 97 Vt. 434, 448, 124 A. 76, 80 (1924). The appropriations voted are "for the support of social programs." The Agencies extend the types of services specified in the statute.

The City has three arguments, however, why the statute does not apply in this case: (1) the statute applies only to towns; (2) the Agencies have not shown that the funds will be spent on town residents; and (3) the money cannot go to the Agencies because they are outside the control of the City. We address these arguments in order after reviewing the general principles of statutory construction that apply.

 It is well established that the primary goal of statutory construction is to give effect to the intent of the Legislature. *Paquette v. Paquette*, 146 Vt. 83, 86, 499 A.2d 23, 26 (1985); *In re A.C.*, 144 Vt. 37, 42, 470 A.2d 1191, 1194 (1984). If a term in a statute is undefined, the next step is to give the statute its plain, ordinary meaning. *Central Vermont Ry. v. Department of Taxes*, 144 Vt. 601, 604, 480 A.2d 419, 421 (1984). We have stated that our policy is to avoid construing a statute in a manner that would render the statute

ineffective, or lead to irrational consequences. *State v. Tierney*, 138 Vt. 163, 165, 412 A.2d 298, 299 (1980). Thus, we look to the language of the statute "in light of the statute's legislative purpose and in terms of its impact on the factual circumstances under consideration." *Lubinsky v. Fair Haven Zoning Board*, 148 Vt. 47, 49, 527 A.2d 227, 228 (1986).

■ The City's first argument, that the statute does not apply to a city, is based on the statutory language that refers only to "a town or incorporated village." However, the Legislature has specifically provided that the word " '[t]own' shall include city and wards or precincts therein" and that "the laws applicable to the inhabitants and officers of towns shall be applicable to the inhabitants and similar officers of all municipal corporations." 1 V.S.A. § 139.[3] Further, 1 V.S.A. § 126 defines a municipality as including a city. Therefore, 24 V.S.A. § 2691 applies to the City of Vergennes. See *City of Montpelier v. Central Vt. Ry.*, 89 Vt. 36, 39, 93 A. 1047, 1050 (1915) ("There is no doubt about the intent of the Legislature as derived from its legislative acts. Cities are not named because in this matter the word 'towns' applies to cities.").

The City's second argument is that there is no assurance in the funding articles that the money will be spent within the City for City residents. One of the three articles, that dealing with Counseling Service of Addison County, Inc., specified that the funds would pay for part of the cost of providing mental health care to City residents. Another of the articles provided funds for a homeless shelter located in the City. The record reveals that all of the Agencies provide a significant amount of aid to City residents.[4]

---

[3] The City points out that this statute goes on to state that it should not be "construed ... to conflict with the acts of incorporation of or laws specially applicable to such municipal corporations," 1 V.S.A. § 139, and argues that using it in this context will conflict with the City charter. This argument is unpersuasive because the social services appropriation statute necessarily conflicts with the normal process of budgeting and expending money *in either towns or cities*. We see nothing in the Vergennes charter that makes that conflict greater in the City.

[4] The plaintiffs served Vergennes residents as follows:

Addison County Community Action Group: 288 households (100 elderly, 70 working poor, 5 unemployment compensation, 60 women with children, remainder those with little or no income).

■■ While it would have been preferable to state specifically in the warning that the programs and facilities would operate within the City with the funds provided, we do not believe that the omission is fatal to plaintiffs' case. As noted above, we must construe the statute in a way to implement the intent of the Legislature and render it effective. The statute does not require that all its details be set forth in the question put to the voters. It is "sufficient that enough is stated to show its character and purpose," 15 E. McQuillin, Municipal Corporations § 40.08, at 302 (3d ed. 1985), and that the question is not misleading. See *Concerned Voters of Londonderry v. Prouty*, 138 Vt. 442, 443, 417 A.2d 927, 929 (1980). In the context of the entire statutory scheme, we believe that the questions put to the voters meet these requirements.[5] The second section of the chapter specifically authorizes the legislative body of the City to make a contract with public or private agencies to provide the services voted by the citizens of the City.[6] If necessary, the City may join with other

---

John Graham Emergency Shelter: 7 households, for a total of 121 bed nights.

Counseling Service of Addison County: 207 residents.

[5] For the same reason, we believe that the addition of the parenthetical phrase "nonbinding referendum" by the City Council does not make the vote nonbinding. In addition to the considerations discussed in the text, we are reluctant to allow the Council to avoid its legal responsibilities based on its unilateral change in the question as submitted in the petitions. This is not the type of irregularity that should be used to defeat the will of the voters. See 15 E. McQuillin, Municipal Corporations §§ 40.14, 40.16, at 337, 346 (3d ed. 1985).

Here, the substance of the warned articles was nearly identical to the petitioned articles. The intended effect of the added words, inserted after the body of each article, was not to cause confusion as to what the voters were voting for, such as the case when a "yes" vote leads to defeat for the article. Rather, the intended effect was to relieve the City from the obligation of an expected affirmative vote. Therefore, the addition of the parenthetical phrase "nonbinding referendum" is irrelevant to the validity of either the warning or the vote. See, e.g., *Smith v. Town of St. Johnsbury*, 150 Vt. 351, 355, 554 A.2d 233, 237 (1988) ("a provision allowing an initiative or referendum by the voters of the municipality is entitled to a liberal construction in favor of allowing the vote where possible.").

[6] 24 V.S.A. § 2692 provides: "The legislative body of a municipality making an appropriation, as provided in section 2691 of this title may make a contract with public or private agencies or persons concerning the provision of those certain social services."

municipalities to obtain the services.[7] Thus, the Legislature has given the Vergennes City Council specific tools to address the concerns it is now raising. The Council can enter into a contract with the Agencies and require the sums voted by the citizens of Vergennes be devoted to services within the City, with appropriate reporting requirements to ensure that this direction is followed. This power obviates any need for more specific direction in the vote.[8]

▮ The third objection raised by the City is also resolved by the statutes. Section 2692 contemplates that services would be delivered by providers not directly controlled by the City, but that the City can achieve sufficient control through a contract.

▮ Since none of the City's arguments are valid, we conclude that, under 24 V.S.A. § 2691, the Agencies are entitled to the funds appropriated at the March 3, 1987 City meeting. Further, they are entitled to bring this action to obtain the funds voted by the City residents, subject to the right of the Council to require a contract under § 2692. See, e.g., *South Tiverton Vol. Fire Dep't v. Cook*, 85 R.I. 30, 34, 125 A.2d 190, 192 (1956) (under statute authorizing town to appropriate funds for a volunteer organization serving the

---

[7] 24 V.S.A. § 2693 provides: "A municipality may secure the provision of social services jointly with adjacent municipalities if such joint action is warranted to provide more effective and efficient social services for its residents."

[8] Although the City has not raised it directly, the statutory language appears more directed to "programs and facilities" that are based "within that town" than at agencies that extend services to town residents but are based elsewhere. We believe that this is a distinction without a difference in this case. The Agencies serve city residents in multiple ways. The services may be provided in the home, or by the giving of monetary support, or at an agency facility. The basis for determining where the service is provided is the resident's demonstrated need, not the locale of the agency. We believe this is in keeping with the spirit and meaning of the statutes. To require the agency itself to be physically present in the town would be contrary to the express provisions empowering the city to seek social services from outside the city limits. Such a requirement could lead to a reduction in services for residents, clearly a result which reduces the effectiveness of the statute. Therefore, under these facts and circumstances, appellees Addison County Community Action Group and The Counseling Center of Addison County, although located in Middlebury, may be considered to be social service programs "within that town."

town, where town voted for appropriation at town meeting, organization was entitled to a writ of mandamus to compel town treasurer to pay the moneys). Accordingly, we find no legal theory upon which the City could prevail. See *Larose v. Agway, Inc.*, 147 Vt. 1, 4, 508 A.2d 1364, 1366 (1986). Denial of the City's motion for summary judgment and grant of the Agencies' motion were appropriate.

The Agencies have cross-appealed that part of the order denying their request for attorney's fees, citing Rule 11 violations by the City.[9] They claim that the City's filing of a motion to amend or alter the findings of the trial court and a motion for continuance, together with discovery requests, constituted harassment and unnecessarily prolonged the proceedings at considerable cost to them. The City responds that the motions were made pursuant to the applicable rules of civil procedure, and all the pleadings, motions, and requests can be shown to be grounded in fact and warranted by existing law, and, therefore, were not for an improper purpose.

■■■ A fair reading of the City's motion pursuant to V.R.C.P. 59(e) reveals that the motion sought reconsideration of the trial court's order and pointed out deficiencies in the procedure used to grant summary judgment with no affidavits. Faced with the City's arguments, the trial court deemed it necessary to convene a hearing on the issue of whether the funds constituted a "necessary town expense." It seems clear, then, that in the trial court's judgment the City's motions were not without merit. We find no abuse of discretion in the denial of sanctions in the form of an award of attorney's fees. *John*

---

[9] V.R.C.P. 11 provides, in pertinent part:

The signature of an attorney or party constitutes a certificate by the signer that ... to the best of the signer's knowledge, information and belief ... it is well grounded in fact and is warranted by existing law or a good faith argument for extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion or other paper is signed in violation of this rule, the court ... shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing ... including a reasonable attorney's fee.

170

*v. Medical Center Hospital of Vermont, Inc.*, 136 Vt. 517, 519, 394 A.2d 1134, 1135 (1978).

*Affirmed.*

## On Motion for Reargument

The October 27, 1987 order specified that "defendant is ordered to make payment to the plaintiffs in the amounts approved by the vote of March 3, 1987." To allow defendant to require that plaintiffs enter into a contract as a condition of receipt of the money and to require that the money be devoted to services within the City of Vergennes, we have amended the mandate. We reiterate, however, our statement in footnote 8 of the body of the opinion that:

> To require the agency itself to be physically present in the town would be contrary to the express provisions empowering the [C]ity to seek social services from outside the city limits. Such a requirement could lead to a reduction in services for residents, clearly a result which reduces the effectiveness of the statute. Therefore, under these facts and circumstances, appellees Addison County Community Action Group and The Counseling Service of Addison County, although located in Middlebury, may be considered to be social service programs "within that [City]."

*The mandate is amended. It shall read: "The Addison County Superior Court's order of October 26, 1987 is amended to add an additional sentence to read as follows: Defendant is authorized to condition the payment of the amounts approved by the voters on plaintiffs executing a contract specifying their obligation to provide services within the City of Vergennes with the amounts paid."*

*Appellant's alternative motion to reargue is denied.*